UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CHUCK STYRON | * | CIVIL ACTION NO. 2:10-cv-01729 |
|     Plaintiff, | * | |
| | * | JUDGE JAMES T. TRIMBLE |
| VERSUS | * | |
| | * | |
| STATE FARM FIRE AND CASUALTY | * | MAGISTRATE JUDGE KAY |
| COMPANY | * | |
|     Defendant | * | |

**************************************************************************

<u>DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT</u>

**MAY IT PLEASE THE COURT:**

State Farm respectfully submits the following Reply Memorandum in Support of its Motion for Summary Judgment.

<u>LAW AND ARGUMENT</u>

Summary judgment is appropriate if the moving party can show that "there is no genuine Dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(a).  A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  And once a properly supported motion for summary judgment has been made, the nonmoving party may not rest upon the mere allegation. S.E.C. v. Recile, 10 F.3d 1093, (5th Cir. 1993)

A factual dispute is "genuine" where a reasonable party would return a verdict for the non-moving party." *Chiu v. Plano Indep. Sch. Dist.,* 339 F. 3d 273  (5th Cir. 2003).  An issue is "material" if its resolution could affect the outcome of the action. *Weeks Marine, Inc. v.*

*Fireman's Fund Ins. Co.,* 340 F. 3d 233, 235 (5th Cir. 2003), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

While the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, it is not required to negate elements of the nonmoving party's case. *Capitol Indem. Corp. v. United States,* 452 F.3d 428, 430 (5th Cir. 2006), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact". Fed. Rule Civ. Proc. 56, Revision Comment 2010.

State Farm submits that the Summary Judgment evidence, or lack thereof, put forth by Plaintiff, supports dismissal of all of Plaintiff's claims.  Plaintiff has raised no genuine issue of material fact which could preclude Summary Judgment.  Alternatively, in the event the Court is of the opinion that all of Plaintiff's claims should not be dismissed, the State Farm is certainly entitled to Summary Judgment dismissing Plaintiff's bad faith claim, as there is no evidence of arbitrary and capricious conduct on the part of State Farm.

## I.    <u>PLAINTIFF EVIDENTIARY OBJECTIONS</u>

In an effort to direct this honorable Court's attention from the merits of his claim, Plaintiff asserts multiple objections to the evidence relied upon by State Farm.  In an attempt to avoid the inevitable conclusion that Plaintiff has insufficient evidence in opposition to this Motion, Plaintiff instead raised baseless objections to items like Plaintiff's own policy of insurance and the claims file which no one disputes is related to the subject claim.  Plaintiff's objections to the policy and claims file are totally baseless, and Plaintiff should be required to pay defendants expenses associated with having to respond to these objections.

According to the 2010 revision to Fed. R. Civ. P. 56(c)(2), "a party may object that the material cited to support or disprove a fact <u>cannot</u> be presented in a form that would be admissible in evidence." The revision comments state, "[t]he objection functions much as an objection at trial, adjusted for the pretrial setting.  The burden is on the proponent to show that the material is admissible as presented **or to explain the admissible form that is anticipated**." Under this newly revised rule, the proponent of the evidence at issue need only that show that the evidence submitted in support of the pending Motion will be presented, at trial, in a form that is admissible.

In a very recent case out of the Eastern District of Louisiana, *Silver Dream, L.L.C. v. 3MC, Inc.*, 2011 WL 4007385, 3 -4  (E.D. La. 9/8/2011), the court discussed the revised rule 56(c)(2) providing that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  As explained by the court:

> This new procedure calls on the proponent of evidence, when the admissibility of such evidence is placed at issue, to show that the evidence can be presented in a form that *would be* admissible. Silver Dream has made no effort to show that the material is admissible as presented. Nonetheless, the Court considers the potential admissibility of these materials.

The court then went on to exam arguments relative to whether the evidence at issue would be authenticated by witnesses, and therefore be admissible at trial.

The same review process is applicable to the exhibits objected to by Plaintiffs in this case.

A.  **<u>Insurance Policy – Exhibit "A"</u>**

Plaintiff has moved to strike the policy of insurance attached to State Farm's motion as Exhibit A, despite the fact that Plaintiff bears the burden of proving coverage.  Without the subject policy, no claim against State Farm exists.  There is no dispute that the policy form relied

upon by State Farm in this Motion is the policy of insurance issued to Plaintiff, and Plaintiff will be required to put such policy into evidence or suffer dismissal of the matter at the end of his case.  If Plaintiff insists that the policy not come into evidence, then his claim should dismissed at the Summary Judgment stage.

There can be no question that someone, either Plaintiff or State Farm, will identify the subject form at trial, and it will therefore be admissible at trial.  Nonetheless, State Farm submits a certified copy of the applicable policy to cure any objection in this regard. *See "Corrected Exhibit A".*

**B.  Claims File – Exhibits "B", "D" and "E"**

The claims file is admissible under Fed. Rules Civ. Proc. Art. 807.  There is no question that Exhibits "B", "D" and "E" are all part of the claims file pertaining to the claim which is the subject of this suit.  The entirety of the subject claims file, along with the claims file related to Plaintiff's Hurricane Rita claim, were voluntarily produced to Plaintiff counsel over a year ago, and Plaintiff counsel has certainly had time to "prepare to meet it."   Additionally, Plaintiff Counsel has listed the subject claims file as an exhibit to be used by Plaintiff at trial.

Further, this claims file will be admissible at trial with testimony from State Farm's representative that it is in fact a business record that was kept within the course of regularly conducted business activity, and that it is State Farm's regular practice to keep such a file or record in connection with all claims. Therefore, it would be admissible as an exception to the hearsay rule under Fed. Rules of Evidence 803(6).  *Brooks v. Reimonenq*, 2010-0296 (La. App. 4th Cir. 7/21/10), 44 So.3d 824; *State Farm Fire & Cas. Co. v. Torregano*, 00-141 (La. App. 5th Cir. 9/26/00), 769 So.2d 754.

Plaintiff's objection to the claims file serves no purpose other than to distract from the merits of this claim, to waste counsel's time, and more importantly to waste the time and resources of this tribunal.  Nonetheless, State Farm attaches the affidavit of Stephen Laughlin, State Farm claims representative, to cure any objection in this regard. *See Affidavit of Stephen Laughlin, attached hereto as Exhibit "G".*

### C. <u>Expert Report– Exhibit "C" and "F"</u>

The reports of Thomas Poole and Buzzy Ribbeck were not sworn, although Plaintiff counsel has been in possession of both of these reports for almost a year at the time of their submission to this Court in support of the current Motion.  Plaintiff counsel has deposed both Poole and Ribbeck, and has had the opportunity to cross-exam both of these gentlemen as to the opinions contained in these reports.

Nonetheless, in order to cure the subject objections related to the expert report, State Farm submits Affidavits of Poole and Ribbeck in accordance with *Fed. Rule Civ. Proc. 56(e)(1). See Exhibits "H" and "I".*

## II. PLAINTIFF HAS NOT PROVIDED ANY EVIDENCE OF A DIRECT PHYSICAL LOSS TO PROPERTY AS A RESULT OF HURRICANE IKE, FOR WHICH HE HAS NOT BEEN COMPENSATED

As set forth above, even though Plaintiff is not the movant on this summary judgment motion, <u>Plaintiff</u> bears the burden of establishing its claims, and, as set forth more fully below, has failed to do so. Therefore, summary judgment is appropriate.

### A. <u>Damage Allegedly Caused by State Farm</u>

As for the claim that representatives of State Farm caused additional damage to Plaintiff's roof during various inspections, this assertion is totally without merit, and is not supported by any evidence.

First, the testimony cited by Plaintiff in his opposition is pure speculation.  As testified to by Plaintiff:

> Eventually, they sent somebody out, the guy came out, got up on the ceiling and then I started – after he came out, then I started seeing other areas that were leaking, so I assume that – and nobody had been on my roof prior to that – **so I assume that he was walking on it and breaking a few tiles or whatever**.

> *R. Doc. 32-6, p. 4 of 5, lines 12-18.*

After Plaintiff testified as to the assumption that someone with State Farm was walking on his roof and broke some tiles, he was further questioned as follows on this issue:

> Q.    Let me make sure I am crystal clear on that.... are you saying that it was the result of State Farm sending somebody out and getting on the roof that this happened?

> A.    I'm just saying that the problem got worse after they came out.

> *See Deposition of Chuck Styron attached hereto as Exhibit "J ", p. 30, line 19 to p 31, line 11.*

When questioned about alleged damage to the ceiling in his master bathroom, Plaintiff testified as follows regarding State Farm claims representatives:

> Q.    And were those leaks from somebody at State Farm getting on the roof?

> A.    I mean, I just assumed.

> *See Exhibit "J", p. 39, lines 12-17.*

Plaintiff has absolutely no evidence that any State Farm claims representative or anyone acting at State Farm's direction caused any damage to his roof during any inspections.

B. **Damage Alleged as a Result of Ike**

      1.    **Roof Damage**

There is absolutely no evidence to suggest that Plaintiff has not been paid for any roof damage that could possibly be related to the subject suit.  In an veiled effort to create some question of fact, Plaintiff claims his testimony as to roof damage as a result of Ike is "undisputed".  While this is not correct[1], it is irrelevant to this motion, as there is absolutely no evidence to suggest that Plaintiff has not been paid for any roof damage that could possibly be related to the subject suit.

As set forth in the original memorandum, State Farm's March 20, 2009 inspection revealed that there were four (4) loose shingles and four (4) damaged ridge caps found on the roof at Plaintiff's residence, over 6 months after Hurricane Ike hit the Texas coast at Galveston Island.[2] *R. Doc.25-2, pg. 39 of 56, entry no. 18.*  It is undisputed that State Farm compensated Plaintiff for these four loose shingles and damaged ridge caps, and Plaintiff can present no evidence, expert or otherwise, that there was any damage to the roof system of his residence for which he has not already been compensated.

Plaintiff attempts to assert that his expert, Cal Chambers, an estimator, will testify regarding the cause of items contained in his estimate, thereby perhaps creating the possibility that Mr. Chambers might allude to additional roof damage.  In doing so, Plaintiff cherry picked a portion of Mr. Chambers' testimony, without giving the court the benefit of the substantive questions coming before and after the testimony cited by Plaintiff.  A review of the entirety of

---

[1] William Cain, the first person that inspected the house on behalf of State Farm noted no damage related to any hurricane, and referred the claim to a local claims office for handling. *R. Doc.25-2, pg. 40 of 56, entry no. 8.*
[2] While Claims Representative Laughlin was of the opinion that these loose shingles and damaged ridge caps could be attributable to wind, he certainly did not relate these loose shingles and damaged ridge caps to Hurricane Ike.

Mr. Chambers testimony shows that Mr. Chambers will not testify as to the cause of any damage to the subject roof:

> Q.   What is your -- what's your background -- first of all, what would you -- when I say -- I asked you whether you were gonna give opinions as to what caused this damage. Exactly what would you be giving opinions about and what is the basis for that? In other words, are you gonna say -- are you gonna tend to come in and say that Hurricane Ike caused damage to this roof?
>
> A.    I think I would just say that I see damage to the roof. There's water coming through the roof. I don't know that I'd get into whether it was Ike or other winds or -- as far as causation, I'd just say  that there's -- water is coming through the roof.
>
> Q.   So your -- as far as the source of water and whether  it's coming from the roof as opposed to an air  conditioning vent or a sprinkler system that's up in  the attic, it appears to you that -- or you would say it's coming from the roof?
>
> A.   Yes.
>
> Q   Whether or not the roof was damaged as a result of winds from Hurricane Ike or from somebody from State Farm  getting  up  and walking on the roof, you don't know?
>
> A.   No.
>
> Q.   Is that right?
>
> A.   That is correct.
>
> Q.   Do you intend to relate specific areas of damage in this house, for example, damages in the dining room area to a particular problem or area of the roof?
>
> A.    No.
>
> Q.   Do you have -- have you looked at any weather information associated with Hurricane Ike?
>
> A.   Yes.
>
> Q.   Have you looked at it in relation to this particular residence?

> A.   No.
>
> Q.   Would I be right in stating that irrespective of what the winds may have been when Hurricane Ike came through is irrelevant to you? In other words, you're just gonna say the source of the problem is water coming through this roof? And I just want to be clear on that.
>
> A.    Yes.

*See Deposition of Cal Chambers attached hereto as Exhibit "K". p. 12, line 21 to p. 14, line 13.* Mr. Chambers does not intend to give any opinion as to the cause of any damage to the roof system at Plaintiff's residence, only that he has a leaking roof.

Plaintiff represents that the affidavit of Randy Lejune with Rhino Renovators "attested that Hurricane Ike caused damage" to Plaintiff's residence (*R. Doc. 32, page 12 of 17*), and Rhino Renovators "relates that the damage was caused by Hurricane Ike…" (*R. Doc. 32, page 12 of 17*). This is incorrect. The affidavit simply states that the estimate is for items that were for "damage sustained to the home…following Hurricane Ike". *R. Doc. 32-7.* Mr. Lejune's affidavit addresses timing, not causation. One can only assume that had Mr. Lejune felt comfortable expressing an opinion that the items contained in his estimate were in need of repair as a result of damage to the subject residence cause by Ike, he would have clearly expressed such an opinion.[3] However, he did not address the issue of causation. He only lists items in need of repair "following" Hurricane Ike.

A vague affidavit is insufficient to overcome summary judgment. *Noyola v. Texas Dep't of Human Resources,* 846 F.2d 1021 (5th Cir.1988); *Gallow v. Autozone, Inc.* 952 F.Supp. 441, 448 (S.D. Tex. 1996). Mr. Lejune's affidavit is vague at best, and is certainly insufficient to create a fact issue about the cause of any damage to Plaintiff's residence.

---

[3] Plaintiff counsel notarized Mr. Lejune's affidavit; certainly he had the opportunity to make any changes necessary to clearly set forth Mr. Lejune's opinions.

More importantly, Mr. Lejune's affidavit provides no information relative to his qualifications to give an opinion as to the timing of the damages, much less what may have caused the damages.  Therefore, the affidavit should not be considered as creating any issue of material fact sufficient to defeat State Farm's summary judgment.

Plaintiff also asserts that Buzzy Ribbeck, a contractor retained by State Farm, opines wind was a cause and source of damage.  R. Doc. 32, p. 8 of 17.  First, Mr. Ribbeck never opined that wind caused any damage to the roofing system at the subject residence, and plaintiff cannot cite a single bit of testimony from Mr. Ribbeck stating as much.  What Mr. Ribbeck does say is that "…there is horizontal wood siding on the gable ends and form the attic side light is gapping through each one of those horizontal wood members." *See deposition of Buzzy Ribbeck attached hereto as Exhibit "L", p. 25, lines 21-23.*  He noted that "…the flashing from the roof to the –the wall, the gables were in really bad shape.*"  Exhibit "L", p. 26, lines 8-10.* Regarding the flashing around the chimney, he testified that:

> "… there is a gap between the south side of the chimney and the gable wall that just a few inches.  It's not – it's not a very big space which makes it very difficult to get back behind there to flash properly.  And the remaining flashing around the chimney was just in really horrendous shape.  You could tell people have gone up there over and over and over and just gunked on tar.  It just needs to be completely removed and replaced. "

*Exhibit "L", p. 27, lines 15-24.*

When questioned about how long this water intrusion of the roof system had been occurring, Mr. Ribbeck replied "[y]ears and years.  Yeah, a lot of years." *Exhibit "L", p. 36, lines 10-18.*

In a second reference to Mr. Ribbeck's testimony, Plaintiff accuses undersigned of misquoting Mr. Ribbeck's report. *R. doc. 32, p. 11 of 17.*  This is not correct.  First, Mr. Ribbeck's report says exactly what undersigned represented to this court it says. *R. Doc. 25-2, p. 56 of 56.*  Second, Plaintiff cites Mr. Ribbeck's response to a hypothetical question regarding the

replacement of the underlying felt on a roof. *R. Doc. 32, p. 12 of 17.*  Counsel's statement makes no sense.  What Plaintiff counsel says is that because the roof is leaking but is not in need of replacement must necessarily mean there was wind damage to the roof.

Further, the statement that "Mr. Ribbeck readily admits that the roof is not in need of replacement at this time" (*R. Doc. 32, p. 12 of 17)* is, at best, the result of the failure to actually look at the deposition transcript cited or, at worst, an attempt to mislead as to what Mr. Ribbeck actually said in order to persuade this Court to deny Summary Judgment.  The small portion of testimony cited by Plaintiff was a single question and answer in the middle of a very long hypothetical discussion.   This hypothetical discussion began on page 83, where plaintiff references Mr. Ribbeck's statement in his report that the felt underlayment is in very poor condition and is in need of replacement. *See Exhibit "L", p. 83, lines 6 -10.*  Plaintiff counsel then asked Mr. Ribbeck what he would do, hypothetically, if Plaintiff counsel were the owner of the house and he called Mr. Ribbeck to come out and look at the roof and tell him if he should replace it. *Exhibit "L", p. 83, lines 12-21.*  Mr. Ribbeck's hypothetical response was, "do you have the money to spend on the roof now", to which Plaintiff counsel said "no." *Exhibit "L", p. 83, line 22, to p. 84, line1.*

In response to Plaintiff counsel's hypothetical answer that he did not have the money to replace the underlayment on his roof now, Mr. Ribbeck then began explaining the advice he would give Plaintiff counsel under this hypothetical scenario, like beginning to save money to pay for the roof, etc.  *See Exhibit "L", p. 84, line 2, to p. 85, line5.*  Plaintiff counsel then asked Mr. Ribbeck the question, still talking hypothetically – "Would you recommend **someone** remove all their shingles just to replace the felt that's underlying?" *See Exhibit "L", p. 85, lines 6 -13.*  To which Mr. Ribbeck stated "No.  Because – I would say--." *See Exhibit "L", p. 85, line*

*14.*  At this point, Plaintiff counsel interrupted Mr. Ribbeck's explanation of his answer, and continued on with his questioning on this topic.  Plaintiff counsel attempted to lead Mr. Ribbeck into agreeing that removing shingles to replace the felt underlayment was overkill, to which Mr. Ribbeck refused to agree, explaining that "It's done with asbestos and slate roofs because it's [the underlayment] is at the end of its life." *See Exhibit "L", p. 85, lines 15-22.*

The discussion continued, with Plaintiff again attempting to lead Mr. Ribbeck to say that he would not recommend that someone take off a perfectly good shingle to replace felt underlayment.  Mr. Ribbeck again declined to agree with Plaintiff's hypothetical question by responding that in his opinion "it's time – it's time for this owner or whomever owns it to start putting money aside to replace all the flashing and felt. *See Exhibit "L", p. 86, lines 2 -13.*  Mr. Ribbeck lastly stated, "Would I tell you right now you need to change it?  I would say not if you did not have the money, but you got to start putting it aside." *See Exhibit "L", p. 86, lines 15-17.*

A review of the complete this discussion between Plaintiff counsel and Mr. Ribbeck clearly reveals that Mr. Ribbeck never said that the felt underlayment on the subject residence was not in need of replacement.  If, in the hypothetical situation posed by Plaintiff counsel, the homeowner had the money to replace the felt underlayment, he would have told the homeowner that it is time to replace it.  If the homeowner did not have funds, it was time for the homeowner to start making financial preparations to replace the felt underlayment.

The testimony of Mr. Ribbeck in no way supports any assertion that there was any wind damage to the roof structure at the subject residence other than what has already been paid by State Farm.   In fact, at the conclusion of the hypothetical questioning, Plaintiff counsel specifically asked Mr. Ribbeck if the shingles and felt were leaking, and Mr. Ribbeck testified that it was not. *See Exhibit "L", p. 86, lines 18-25.*  Mr. Ribbeck's testimony is quite consistent

with the statement in his report, and now set forth in his affidavit, that: "We have found no evidence of roof damage that would be caused by severe weather during any of our forensic inspections."

In sum, Plaintiff continuously argues that "State Farm admits there was wind damage." True, as State Farm compensated Plaintiff for four loose shingles and four damaged, although previously repaired, ridge caps.  Other than these four loose shingles and damaged ridge caps, Plaintiff has come forth with no evidence that the roof at the subject residence sustained any damage for which he has not been compensated which might, in any way, be related to Hurricane Ike.  To the contrary, all of the evidence indicates that there was no wind damage beyond the four loose shingles and damaged ridge caps indentified by State Farm on it March 20 inspection and paid for in the tender made by State Farm.  Based on all of this undisputed evidence, State Farm is entitled to Summary Judgment dismissing Plaintiff's claim to recover any additional payment related to his roof.

### 2.    <u>**Initial Interior Damage**</u>

The evidence in this case reveals that all compensable interior damage has been paid by State Farm.

State Farms policy, Paragraph 1, "LOSSES NOT INSURED"  excludes losses consisting of, or that are directly or indirectly caused by, multiple perils such as wear, tear, deterioration, mechanical breakdown, and settling or cracking of floors, walls, ceilings and roofs.  *See Corrected Exhibit "A"*.  However, Paragraph 1 contains an exception to these excluded losses that provides coverage for " any resulting loss" from these perils "unless the resulting loss is itself a Loss Not Insured by this section."  *See Corrected Exhibit "A"*.  Based on these provisions, Claims Representative Laughlin inspected the Styron residence, finding a structure

with multiple problems, all of which were related to workmanship/improper installation, wear, tear, settlement and maintenance, except four loose shingles and four damaged and previously repaired ridge caps.[4]  He further made a determination that fresh water stains on the ceiling were a covered loss, but that roofing system was itself not covered because of workmanship, improper installation, wear, tear, maintenance and deterioration. *R. Doc. 25-2, pg. 39 of 56, entry 18.*  He also determined that there were separate long term issues with the interior of the residence that did not arise from a covered loss, but arose from long term and continuous seepage or leakage of water resulting in rot or deterioration and which were not compensable under the subject policy. *R. Doc. 25-2, pg. 39 of 56, entry 18.*  State Farm estimated that the total cost to repair/replace the loose tiles and ridge caps on Plaintiff's roof and covered interior items, tendering $2,643.44 less the applicable deductible and $143.64.

As for the damage up to and including the date of Stephen Laughlin's inspection in March of 2009, Plaintiff has no witness or documentary evidence which refutes Claims Representative Laughlin's determination as to what was or was not covered under Plaintiff's policy, or that the amount he estimated and tendered was improper.  Buzzy Ribbeck's testimony supports Laughlin's conclusions.  Cal Chambers has admitted he has made no determination as to whether the items contained in his estimate are related to any particular event.  Neither Rhino Renovators estimate nor the affidavit of Randy Lejune state that the need for repairs estimated therein were caused by Hurricane Ike.  Even if the affidavit were to contain such a statement, it would have to be disregarded, as there is no indication in the affidavit that Randy Lejune is qualified to give such an opinion.  As such, there is no material question of fact that State Farm

---

[4] Laughlin's  conclusions regarding the condition of the roof system are supported by, and consistent with, Buzzy Ribbeck's conclusions regarding the condition of the subject roof system.

adequately and fully compensated Plaintiff for all covered damages to his residence as of April 8,

2009, the date of State Farm's unconditional tender to Plaintiff.

3.      **Post Unconditional Tender Damage**

Plaintiff seeks recovery for additional ongoing damage resulting from rain that has

allegedly continued to enter into the envelope of his home since Claims representative Laughlin

made his coverage determination, and an unconditional tender was made to Plaintiff.   The

additional damage is not covered by State Farm's policy.

The policy issued to Plaintiff by State Farm contains the following exclusion, without any

applicable exception:

> 2.      We do not insure under any coverage for any loss which would not have
> occurred in the absence of one or more of the following excluded events.
> We do not insure for such loss regardless of:  (a) the cause of the excluded
> event; or (b) other causes of the loss; or (c) whether other causes acted
> concurrently or in any sequence with the excluded event to produce the
> loss; or (d) whether the event occurs suddenly or gradually, involves
> isolated or widespread damage, arises from natural or external forces, or
> occurs as a result of any combination of these….

> d.      **Neglect**, meaning neglect of the **insured** to use all reasonable
> means to save and preserve property at and after the time of a loss,
> or when property is endangered.

As to this alleged post-tender damage, Plaintiff has testified as follows:

> Q      I guess my question is:  Was there any physical damage to the roof
> as a result of this -- I know we had some rain and not much wind,
> 25-mile-an-hour winds or something.  Did you have –

> A      I've been having problems with this.  I mean, **the whole thing is I
> don't want to go spend -- I mean, I have to have a new roof one
> way or another**.  I mean, I have to replace that roof.  Since Ike it's
> been a constant battle.  I mean, I've done fixed my ceilings
> probably three times, you know.  I mean, I got to get this thing
> resolved and fixed.  And I don't think the patching thing, you
> know, is gonna work anymore.  You know, **it's got to be replaced**.

*See Exhibit "J", p. 48, lines 8-20.*

Thus, Plaintiff admitted that the roof at the subject residence needs to be replaced, that he has to have a new roof one way of the other, that he has had a constant battle with his roof since the time of this alleged loss, and that patching the roof was not going to correct the ongoing entry of water into the subject residence.   In fact, Plaintiff admitted that Rhino Renovators, which inspected the property on May 7, 2009, told him that the roof at the subject residence needs to be replaced. *See Exhibit "J", p. 43, lines 19-25.*   Assuming all that Plaintiff says is true, despite knowing all of this, Plaintiff testified that he "did not want to…spend", catching himself before he said "the money", to stop the ongoing roof leaks he claims he is having a the subject property.

As testified to by Buzzy Ribbeck, the flashings on Plaintiff's roof "were in really bad shape", and the flashing around the Chimney, an area above the kitchen, were in "horrendous" condition.  He further testified that there had been water intrusion into the roofing system of this home for "years and years."

Assuming Plaintiff has continued to have roof leaks as testified by him, there is no question that these continued ongoing roof leaks are the result of Plaintiff's neglect.   State Farm's policy is not a maintenance contract.  An insured cannot sit back and watch the interior of his or her home suffer repeated damage and not take reasonable action to protect their property under circumstances where they know that the roof at the insured residence needs to be replaced, they know that patching the roof was not going to correct the ongoing entry of water into the subject residence, and the insured is told by a contractor that the roof needs to be replaced and then make a claim to recover for the very same damage that the insured has an affirmative duty to mitigate.  This is exactly what Plaintiff is attempting to do.  Thus, State Farm is entitled to Summary Judgment dismissing all of Plaintiff's claims.

**III.**    **Plaintiff Raises no Material Issue of Fact on Bad Faith.**

The insured bears the burden of proving his "bad faith" claims, and that these statutes are <u>strictly</u> construed[5].  Plaintiff has provided no evidence or legal support to establish a "bad faith claim" under either La. R.S. 22:1892 (formerly La. R.S. 22:658) or La. R.S. 22:1973 (formerly, La. R.S. 22:1220).  Therefore, even if the Court is not of the opinion that Plaintiff's entire claim should be dismissed, there is certainly no question of fact that State Farm has not been arbitrary and capricious in the handling of this claim.

In an effort to defeat summary Judgment on the bad faith claim, Plaintiff again alludes to the fact that Claims Representative Laughlin discovered four loose shingles and four damaged, but previously repaired ridge caps along with fresh water stains six months post Ike, and opined that these items could be attributable to wind.  Plaintiff then states that State Farm "offered only $499.80."  First, the correct amount was $2,643.44, not the $499.80 Plaintiff say was "offered." *Exhibit G, ¶ 4* Second, this amount was not offered, but was tendered unconditionally. *Exhibit G, ¶ 4.*  More importantly, Plaintiff has come forth with no evidence that the amount of the unconditional tender is the incorrect amount to compensate Plaintiff for the damages that Claims Representative Laughlin found compensable at the time of his March 20, 2009 inspection.

Incredibly, Plaintiff next asserts that Plaintiff submitted the Rhino Renovators estimate, which is "satisfactory proof of loss of an undisputed amount", and that "State Farm did nothing to properly adjust the claim, following this submission." *R. Doc. 32, p. 14 of 17.*  Such a representation cannot be made in good faith.  Upon receipt of the Rhino Renovators estimate, State Farm representative Laughlin contacted Rhino to schedule a mutual inspection of

---

[5] See *e.g., Hart v. Allstate Ins. Co.*, 437 So.2d 823 (La. 1983); *see also e.g., Headrick v. Pa. Millers Mut. Ins. Co.*, 245 So.2d 324 (La. 1971); *Franklin Ford v. Golemi, Albrecht Ins.*, 522 So.2d 1283, 1288 (La. App. 5rh Cir. 1988) *writ denied*, 530 So.2d 83).

Plaintiff's residence for the purpose of specifically addressing the items in Rhino's estimate. Each of the items contained in Rhino's estimate were addressed.  During this meeting, Claims Representative Laughlin and a Representative of Rhino discussed items of damages, after which Claims Representative Laughlin made a determination that the items in the Rhino estimate were not covered under the policy issued to Plaintiff by State Farm. *Exhibit G, ¶ 5.*  Such actions by State Farm and Claims Representative Laughlin are hardly doing "nothing to properly adjust the claim..." as alleged by Plaintiff.

In an effort to make all efforts to determine if there were any additional compensable items of damage at Plaintiff's residence, State Farm retained a professional engineer, Poole Engineering, to inspect the property and determine the cause or causes of the items of damages being claimed by Plaintiff. *Exhibit G, ¶ 6.*  Based on the results of that inspection, which indicated that the additional damage for which State Farm had not tendered payment (i.e. the <u>old</u> water stains, and buckled floor) were <u>not</u> caused by Hurricane Ike.   The same is true of the inspection by Buzzy Ribbeck after the initiation of this litigation. Therefore, no additional payment has been tendered by State Farm.

The following are undisputed: (1) the claim was reported to State Farm claims by Plaintiff's agent on March 16, 2009(R. Doc. 25-2, p. 41 of 56, entry no. 1); (2) on March 19, three days later,  State Farm Claims Representative Cain, a member of State Farm's Catastrophe Team, inspected the insured premises and found no hurricane damage, and referred the claim to a local claims handler(R. Doc. 25-2, p. 41 of 56, entry no. 8);  (3) on March 20th, 2009, the very next day Claims Representative Laughlin inspected the property and determined that damage in the amount of $2,643.44, less $143.64 in depreciation, and less Plaintiff's $2,000 deductible, was payable under the policy(*R. Doc. 25-2, p. 39 of 56, entry no. 39; Exhibit G, ¶4*); (4) Payment was

tendered to Plaintiff on April 8, 2009 (*Exhibit G, ¶ 4*) (5) after receiving the Rhino estimate, Claims Representative Laughlin scheduled inspection with Rhino at Plaintiff's residence for June 12, 2009 (*R. Doc. 25-2, p. 34 of 56, entry no. 41*); (7) the subject residence was inspected with addressed items in Rhino's estimate on June 12, 2009(*R. Doc. 25-2, p. 34 of 56, entry no. 42*); (8) after this inspection, Claims Representative Laughlin found no additional covered items in Rhino's estimate(*R. Doc. 25-2, p. 34 of 56, entry no. 42*), (9) because of the issues with the insured residence, State Farm hired Poole Engineers, a civil structural engineer to inspect the insured residence and give an independent opinion as to the cause of the items being claimed (*R. Doc. 25-2, p. 33-34 of 56, entry no. 33-35*); (10)  On August 25, 2009, State Farm received a report from Poole as to causation of items, indicating that the items being claimed by Plaintiffs were of a nature that they would not be covered under the policy issued to Plaintiff by State Farm *R. Doc. 25-2, p. 32 of 56, entry no. 53-57.*

Further, after Plaintiff filed suit, State Farm retained the services of Buzzy Ribbeck to get a third point of view of the cause of items being claimed.  As is stated above, Mr. Ribbeck found no damage to the roof system of Plaintiff's residence as a result of any weather event.  What he did find was a roofing system, felt underlayment that was at the end of its life, and associated flashing that he said was in terrible, and in some cases, horrendous condition.

In *Kodrin v. State Farm Fire & Casualty* Co., 2009 WL 614521 (5th Cir. 3/11/09), the Court of Appeals, in reversing an award for penalties and attorney's fees stated the following on the standard for such an award:

> The insured has the burden of proving that the insurer acted in bad faith. Under the applicable statutes, "arbitrary and capricious" means "vexatiously," as in a "vexatious refusal to pay" or a refusal to pay without reason or justification.[FN32] An insurer does not act arbitrarily or capriciously when its refusal to pay a claim is based on a genuine dispute over coverage or the amount of the loss.

Regarding the specific lack of evidence submitted on the bad faith issue, the Court of Appeal stated the following:

> The only evidence that the Kodrins offered to demonstrate that this denial was in bad faith is the fact of the denial itself and their expert's testimony that wind actually caused the damage to the home. This is evidence that State Farm was wrong about the cause of damage, but without more, it is not evidence of bad faith. An insurer cannot be held to have acted in bad faith simply because it eventually turned out to be wrong about the cause of the damage.[FN34] "Where there is a serious dispute as to the nature of the loss, thus leaving the question of coverage in doubt, the insurer's refusal to pay the claim is not arbitrary, capricious or without probable cause." Instead, the Kodrins had the burden of proving that State Farm withheld payment unjustifiably and without cause, and they failed to do so. For example, the Kodrins offered no evidence that State Farm believed that wind was likely the cause of the damage but nevertheless withheld payment.

*Krodin, at. p. 6.*

In this case, State Farm's refusal to tender additional amounts was certainly not "based on random choice or personal whim, rather than a reason or system", but instead was based on numerous inspections by State Farm of the property, one to specifically address an estimate submitted by Plaintiff,  and inspections of two experts. *See Reed v. State Farm Mut. Auto. Ins. Co.,* 857 So.2d 1012 (La. 2003).  At worst, the facts of this case indicate a serious dispute as to the cause and extent of any covered damage at the subject residence.  Therefore, State Farm's actions were not arbitrary or capricious, or without probable cause, and State Farm is entitled to Summary Judgment dismissing Plaintiff's claims for penalties and attorney's fees under Title 22.

## **CONCLUSION**

Plaintiff has put forth no evidence to refute that State Farm has fully compensated him for any and all damage to roof structure at his residence that could in anyway be related to any weather event, and in particular Hurricane Ike.  Therefore, State Farm is entitled to summary judgment dismissing Plaintiff's claim for additional roof damage.

Additionally, Plaintiff has come forth with no evidence that Stephen Laughlin's determination as to interior items covered by State Farm's policy was correct, nor has Plaintiff come forth with any evidence that the amounts tendered by State Farm to Plaintiff for this covered interior damages was incorrect.  Plaintiff complains about the amount of the tender, but puts forth no evidence that the tender was of the incorrect amount.

Additionally, as for alleged on-going damage following State Farm's tender, if we accept what Plaintiff says as true, any continuing damage is clearly excluded from his policy as a result of his own neglect.  Therefore, State Farm is entitled to summary judgment dismissing Plaintiff's claim for any interior damage.

Finally, even if the Court is of the opinion that there are questions of fact regarding the cause and extent of damage to Plaintiff's home, State Farm is certainly entitled to summary judgment dismissing Plaintiff's bad faith claim, as there is absolutely no evidence that State Farm has been arbitrary and capricious in the handling of Plaintiff's claim.  To the contrary, all of the evidence on this issue indicates that State Farm has made every effort to fully compensate Plaintiff for his loss.  Even if State Farm turns out to be wrong relative to cause and scope of loss, there is no evidence of arbitrary and capricious conduct.  Therefore, State Farm is entitled to summary judgment dismissing Plaintiff's claim for bad faith.

Respectfully submitted,

STOCKWELL, SIEVERT, VICCELLIO,
CLEMENTS & SHADDOCK, L.L.P.

BY:      s/ Todd M. Ammons
             TODD M. AMMONS
             La. Bar Roll No. 21441
             SOMER G. BROWN
             La. Bar Roll No. 31462
             P.O. Box 2900
             Lake Charles, LA  70602

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of November, 2011, a true and correct copy of the above and foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record participating in CM/ECF by operation of the court's electronic filing system.

s/ Todd M. Ammons
TODD M. AMMONS
