RECEIVED
IN LAKE CHARLES, LA

DEC 22 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CHUCK STYRON | : | **DOCKET NO. 10-1729** |
| VS. | : | **JUDGE TRIMBLE** |
| STATE FARM FIRE & CASUALTY CO. | : | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is "State Farm Fire & Casualty Company's Motion for Summary Judgment" (R. #25) wherein State Farm seeks a ruling from this court that as a matter of law, plaintiff is owed no money under the insurance policy issued by State Farm as a result of Hurricane Ike. Additionally, State Farm moves for the court to find that it owes no penalties or attorney's fees.

## FACTUAL STATEMENT

On September 13, 2008, Hurricane Ike made landfall on the Texas coast. Plaintiff owns property that was insured by State Farm during the relevant period. On March 16, 2009, plaintiff reported to his State Farm agent that he had damages to the interior of his home as a result of a roof leak. The next day a State Farm agent contacted plaintiff to discuss the claim; plaintiff reported that the roof of the home was missing some shingles and after the last rain, the ceilings were leaking in several different rooms. State Farm inspected the home on March 19, 2009 and found no hurricane related damage, but noted that several shingles on the home had come off. The State Farm agent notified his supervisor and advised that he saw no hurricane damage. Hence, the claims were moved from the Catastrophe office to "zone" for handling as a non-hurricane related claim.

The claim was then handled by another State Farm agent who inspected the home on March

20, 2009. This agent noted four loose asbestos shingles on the roof and four damaged roof caps. The agent determined that the water spots on the ceilings were caused by poor workmanship, many of which were the result of long-term damage. The agent also noted some fresh water spots on plaintiff's ceiling and determined that the loose shingles and ridge caps could be attributed to wind.

After a review of the file and the related Hurricane Rita claim, the agent prepared an estimate for the loose shingles and damaged caps and issued a payment to plaintiff in the amount of $499.80 to cover the cost of these repairs, less depreciation and the applicable deductible. Subsequently, State Farm received an estimate to repair the damage to the home from Rhino Renovators ("Rhino"). State Farm reviewed the estimate and determined that the repairs contained in the estimate were for damage that had previously been determined to be either long term damage, lack of maintenance or workmanship items which were "non-covered."

State Farm conducted another inspection on June 12, 2009. During the inspection, Rhino advised the State Farm agent that Rhino thought that wind had lifted the flat roofing which resulted in water entering the home. The State Farm agent pointed out that the flat roofing was still nailed down and that it could not have been lifted and then re-nailed itself. State Farm determined that no additional money was owed to plaintiff.

State Farm further engaged the services of Poole Engineering to provide a professional determination as to the cause of the damage. Poole Engineering inspected the property on June 24, 2009 and issued a report on August 25, 2009. The Poole Report made the following conclusions regarding the water stains:(1) insufficient insulation of ducts and air conditioning grills;(2) insufficient insulation of the spaces between the ceiling and second floor and between the ceiling and attic; and (3) insufficient insulation of the sprinkler system piping.

2

As to the buckled first floor bedroom the Poole Report indicated that the excessive moisture resulted from a breach moisture barrier caused by (1) normal long-term movement of the finished floor relative to the sub-floor, (2) normal aging of the roofing paper that forms a moisture barrier, and (3) excessive downward settlement.

State Farm also retained Buzz Ribbeck to determine the cause of damage. Ribbeck's inspection revealed no evidence of roof damage caused by severe weather, and the asbestos shingles, built up roof and associated flashings had passed their life cycle and were in need of replacement.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[2]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[3] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[4]  Once the movant makes this showing, the burden shifts to the non-moving party to set forth

---

[1]  Fed. R. Civ. P. 56(c).

[2]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[3]  Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[4]  Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

3

specific facts showing that there is a genuine issue for trial.[5]  The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[6] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[7] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[8]

## LAW AND ANALYSIS

Plaintiff maintains that there are genuine issues of material fact as to the scope of damage caused by Hurricane Ike– a covered loss. First, Plaintiffs complains that  State Farm attaches no valid summary judgment evidence, specifically referring to State Farm exhibits A - F.  Plaintiff relies on the recent modifications to Rule 56(c)(2) of the Federal Rules of Civil Procedure which provides as follows:

> A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

*Exhibit A*

Plaintiff complains that this exhibit is an uncertified copy of a homeowner's policy, thus it is inadmissible.  Plaintiff moves to strike the policy even though plaintiff does not dispute that this policy was in effect during the relevant time period.  As noted by State Farm, it is somewhat

---

[5] Anderson, 477 U.S.  at 249.

[6] Celotex Corp. v.  Catrett, 477 U.S. 317, 324 (1986).

[7] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[8] Anderson, 477 U.S. at 249-50.

confusing as to why plaintiff would want the policy stricken. If the policy was stricken, plaintiff would not be able to prove coverage for this claim. Be that as it may, State Farm has attached a certified copy of the applicable policy to cure the objection.[9] We find no merit to plaintiff's objections to this exhibit being submitted as summary judgment evidence.

*Exhibits B, D, and E*

Plaintiff complains that exhibit B is a Claims Service record which is hearsay and not admissible. Plaintiff complains that photographs depicted in Exhibit D are unauthenticated and thus inadmissible in form. Plaintiff complains that exhibit E is a retention letter from State Farm to Mr. Poole which is hearsay and unauthenticated.

State Farm notes that plaintiff's counsel has listed the claims file (which includes exhibits B, D and E) as an exhibit to be used by plaintiff at trial and further argues that this claims file and the contents therein is a business record kept within the course of regularly conducted business activity making it an exception to the hearsay rule under Federal Rules of Evidence 803(6). State Farm also attaches the affidavit of Stephen Laughlin, a State Farm claims representative, to cure the objection.[10] Accordingly, we find no merit to plaintiff's objections to these exhibits being used as summary judgment evidence.

*Exhibit C*

Plaintiff complains that exhibit C, a narrative report of State Farm's expert, Thomas Poole, is inadmissible hearsay. Plaintiff argues without supporting authority that the expert report as a general rule is not admissible. State Farm remarks that plaintiff has been in possession of this report

---

[9] See Corrected Exhibit A attached to State Farm's reply. R. #33.

[10] State Farm exhibit G, attached to State Farm's reply.

for almost a year and has deposed Mr. Ribbeck and had an opportunity to cross-examine him as to his opinions. State Farm attaches Mr. Ribbeck's affidavit in accordance with Federal Rule of Civil Procedure 56(e)(1) to cure the objection to the expert report. As such, the court finds no merit to plaintiff's objection to this summary judgment evidence.

*Is there a genuine issue of material fact for trial as to a direct physical loss to the property as a result of Hurricane Ike?*

State Farm maintains that there is no evidence of additional damage to plaintiff's residence for which he has not been paid that was caused by Hurricane Ike. First, State Farm submits that the loss was not reported until March 2009 and was reported as damage occurring as a result of rain during the week of March 9 to March 14, 2009. State Farm's representative found no Hurricane related damage. After the claim was re-assigned from the Catastrophe office to zone claims, a second inspection revealed no hurricane related damage, but noted four loose asbestos shingles on the roof and four damaged ridge caps. The claims representative attributed the water spots on the interior ceilings to poor workmanship and long-term damage. After noting some fresh water spots, the representative prepared an estimate for repair to the loose shingles and ridge caps and issued payment to plaintiff.

State Farm engaged Poole Engineering who determined that there was no Hurricane related damage to the residence. In addition, State farm also engaged Mr. Ribbeck who made several independent investigations. Mr. Ribbeck reported no evidence of any damage related to Hurricane Ike and specifically indicated that: (1) the ceiling stain in the study was not because of a roof leak, but caused by insufficient insulation; (2) the ceiling stains in the dining room and kitchen resulted from wood siding, flashing and felt underlay of the roof that was rotting and in poor condition, and that the roof shingles indicated no damage from wind or rain; (3) the ceiling stain and floor damage

on the first floor was not caused by roof damage, but rather issues concerning plumbing; (4) the ceiling stain in the master bedroom was not caused by roof damage; and (5) the stain on the ceiling of the bathroom in the first floor bedroom was not caused by roof damage, but was caused either by the intersecting tie in to the flat build up roof/siding addition or from the west lean to dormer west wall.  More importantly, the report concluded that there was no evidence of roof damage caused by severe weather.

State Farm further remarks that the opinions of Ribbeck and Poole regarding causation are the only expert opinions, and that there is no coverage under the policy unless the insured shows that the loss was "fortuitous" in nature.[11]  An insurance policy is generally considered to cover only "risks" and not certainties such as ordinary wear and tear.[12]  State Farm asserts that plaintiff has no material evidence establishing any type of fortuitous, accidental direct physical loss to the property as a result of Hurricane Ike for which he has not already been compensated.

Plaintiff relies on State Farm's response to Plaintiff's Request for Production of Documents, specifically Request for Production No. 3 produced by State Farm wherein State Farm states the following:

> Wind damage to four (4) asbestos shingles (can be reset they are just loose) and four (4) ridge caps.

Thus, plaintiff argues that State Farm admits that there was some damage to the home caused by a covered event– "wind damage."  The court notes that State Farm does not deny this damage and

---

[11]  See <u>CXY Chemicals U.S.A. v. Gerling Global General Ins. Co.</u>, 994 F.Supp. 770, 779 (E.D. La. 1/23/98).

[12]  <u>Anders v. Poland,</u> 181 So.2d 879, 881 (La.App. 4 Cir. 1966).

in fact paid plaintiff to repair the shingles and ridge caps. Thus, this evidence is not relevant to any additional alleged damages claim.

Next, plaintiff relies on State Farm's expert, Mr. Ribbeck, who plaintiff alleges testified in his deposition that he "admitted that wind driven rain was the cause of substantially all of the water damage to the interior of Mr. Styron's home."[13] The court has reviewed the testimony of Mr. Ribbeck and while Mr. Ribbeck does testify that wind driven rain penetrated "something",[14] he does not testify that this "wind-driven" rain was the cause of the water spots on the ceiling. Furthermore, Mr. Ribbeck's testimony is that the wind-driven rain entered in flashings and or roof intersects. However, he does not testify that the flashings, roof intersects, or fireplaces bricks were damaged by winds or a fortuitous event.[15] More significantly, Mr. Ribbeck's report, as state herein above, concludes that there is no evidence of roof damage caused by severe weather.

Plaintiff relies on its expert, Cal Chambers, who opined that water intruded into the home through the roof.[16] However, a more complete review of Mr. Chamber's deposition reveals that Mr. Chambers will not and cannot testify as to causation based on the following colloquy:

> Q.    What is your - - what's your background - - first of all, what would you - - when I say - - I asked you whether you were gonna give opinions as to what caused this damage. Exactly what would you be giving opinions about and what is the basis for that? In other words, are you gonna say - - are you gonna tend to come in and say that Hurricane Ike caused damage to this roof?
>
> A.    I think I would just say that I see damage to the roof. There's water coming through the roof. I don't know that I'd get into whether it was Ike or other winds or - - as far as causation, I'd just say that there's - - water is coming

_____

[13]  Plaintiff's opposition, p. 5, R. #32.

[14]  Mr. Ribbeck's testimony does not clarify exactly where or what this water penetrated.

[15]  Plaintiff's exhibit C.

[16]  Plaintiff's exhibit D.

through the roof.[17]

\* \* \*

Q.      Whether or not the roof was damaged as a result of winds from Hurricane Ike

      or from somebody from State Farm getting up and walking on the roof, you

      don't know?

A.      No.

Q.      Is that right?

A.      That is correct.

Q.      Do you intend to relate specific areas of damage in this house, for example,

      damage in the dining room area to a particular problem or area of the roof?

A.      No.[18]

The court finds that Mr. Chamber's testimony does not create a genuine issue of material fact for trial as to whether or not Hurricane Ike or a fortuitous event caused additional damage to plaintiff's residence.

Plaintiff relies on the affidavit of Randy Lejune with Rhino Renovators as evidence that Hurricane Ike caused damage to plaintiff's residence.[19]  The court has read the affidavit of Mr. Lejune and has determined that it does not attest to the cause of the damage to plaintiff's home, but only attests that he has prepared an estimate to make limited repairs to the home following Hurricane Ike.  This affidavit, alone, is not sufficient to create a genuine issue of material fact for trial as to

---

[17]  State Farm Exhibit K, p. 12-13, lines 21-8.

[18]  Id. p. 13, lines 15-25.

[19]  Plaintiff's exhibit F.

9

whether or not State Farm owes plaintiff additional money for damages allegedly caused by Hurricane Ike.

Finally, plaintiff relies on Mr. Styron's deposition testimony to support his position that there is additional damage to the residence for which State Farm has not compensated him as a result of Hurricane Ike. Plaintiff's testimony reveals that he "assumed" that after the State Farm agent inspected his roof, that the agent caused additional damage to the roof by walking around on it. The court finds that Mr. Styron's testimony is mere speculation and not factual, therefore, it is insufficient to create a genuine issue of material fact for trial.

*Bad faith claims*

Plaintiff maintains that the jury should decide whether or not State Farm violated Louisiana Revised Statute 22:1220 by arbitrarily and capriciously failing to pay plaintiff's claim within thirty days. Because we find that there is no genuine issue of material fact for trial as to whether or not State Farm owes additional compensable damage, we further find that State Farm cannot be held liable for penalties and attorneys fees under this statute.

## CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted in favor of State Farm, dismissing with prejudice plaintiff's claims of additional damage.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 22ⁿᵈ day of December, 2011.

JAMES T. TRIMBLE, JR.
U.S. DISTRICT JUDGE